We have six cases on our docket this morning, five oral arguments. We'll start with our first, Martinez v. Blanche. This is 25-9542, Martinez-Reyna v. Blanche. Counsel, you may begin. Good morning, Your Honors. I am Andrew Yunkins, attorney for Petitioner. May it please the Court. This Court should remand the instant case to the Department of Homeland Security for the application of 8 CFR section 1003.55 to Petitioner's conviction under California Penal Code section 237.5. While Petitioner was originally sentenced to 365 days of prison and suspended, in August of 2018, the California Superior Court amended the sentence to 364 days, which would take her conviction out of the realm of an aggravated felony under the Immigration and Naturalization Act, and therefore relieve Petitioner from administrative removal. There are two key issues in this appeal. Counsel, could I just ask you about what you just said? In the record, there's an order reducing the sentence to 364 days that was filed on August 2, 2024, and you just said 2018. So what is it? The order of August 2, 2024, is an order demonstrating under CPC 18.5 that there was an amendment done. CPC is California Penal Code? Yes, Judge, thank you. Under California Penal Code 18.5, which is called the Wobbler Statute, and that demonstrates that there was a prior change under California Penal Code section 17B in 2018. What the judge likely did in 2024 is look at the record of the case and say, ah, in 2018, there was such a change under California Penal Code section 17B. Well, that isn't what the order says. It says the sentence is reduced, and I understand that under the Wobbler Statute, it went from a felony to misdemeanor in 2018, but I don't see anything to show that the term was reduced. The change under the Wobbler Statute 18.5 would have been an automatic change. That order— How is the DHS supposed to know that? The only documented indication about a reduction is in 2024, and the DHS had acted before that on the basis that the sentence was 365 days. On—in the certified record of proceedings at page 42 is the record of amendment to 364 days under California Penal Code section 17B. Is the reduction under California law, if it's reduced to a misdemeanor, it's, as a matter of law, 364 days, right? That's exactly right, Your Honor. So what happened in 2024—and I actually—maybe you can explain why all of a sudden there was an order in 2024—but in 2018, that was, as a matter of law, the misdemeanor reduction reduced the term of imprisonment as well, right? So in order to argue this issue in front of the immigration judge, what the record does reflect in the administrative record is that the attorney went to California Superior Court for a paper saying this is what happened, and California Superior Court gave him a paper saying that the sentence is reduced, which could potentially mean has been reduced, under California Penal Code section 18.5. So is it—is it the best way to understand the 2024 order as memorializing what happened as a matter of law in 2018? Yes, Your Honor. That's exactly what we're arguing. If the court decides that exhaustion is not required or satisfied, it should then turn to this issue. However, we argue that administrative exhaustion would not be required in this process because it involves a legal challenge. Well, there's a factual predicate to that challenge, and the—the notice from December 2018 to DHS states you were convicted on this date and sentenced to 365 days. And his whole argument is based on the fact that actually his final sentence, his later sentence, was on a different date. It was 364 days. Doesn't he have an obligation to exhaust—to preserve his argument, to—to get the facts straight? How is—how is DHS supposed to know that they have something different to consider if he doesn't challenge the facts? And the—what we would assert is that the certified record of proceedings does show that there was this amendment and that the DHS officer, therefore, had the undisputed material facts in front of them. At the DHS proceeding? In the DHS proceeding, yes, Judge. And how did they get that—those facts? There is a minute order, again, at page 42 of the certified record of proceeding that shows that this was the case. The allegations in— Is there—is there—normally, to preserve an issue, you need to bring it to the attention of the judge, not just have it in the record. Is there any indication in the record that in the DHS proceeding, whoever was running it, that this fact was brought to his or her attention? There were multiple attempts to bring this fact to the DHS officer's attention. In addition— At the expedited proceeding? Not within the 10 days. Not within the 10 days. However, there was an additional letter that was sent to the Department of Homeland Security later on. What happened in this case is that they served the notice of intent on the petitioner, and then they transported her. They transported her to a completely different state in a different place. And later on, once she was able to consult with counsel, counsel said, well, this isn't—you know, these allegations are correct that you saw on this notice of intent, but there were additional facts and additional law to be applied. And how long after the notice was that? The rules require a response in 10 days. Am I correct about that? That's correct. So, if you don't get the lawyer for a month or so, or a couple months, and then the lawyer erases it, that's untimely under the rule, is it not? It would be untimely. It would be a sua sponte request for reconsideration that does not require exhaustion. So, we have two arguments regarding exhaustion. That's one of them. And the other, that exhaustion isn't required with respect to a legal issue, and that that's the only operative issue in this case, because— Except the facts hadn't been presented. There's a legal issue that follows from that fact. But if the fact on which the legal issue is based is not presented to the agency, then that's not exhausted. We would argue that because the certified record of proceedings did contain that fact, that the Department of Homeland Security, in their own records, had access to that information. Well, that's not the way we treat court proceedings. If something's in the record, and you don't present it to the judge on a motion in response to a motion for summary judgment, we're not going to let you argue that point on appeal ordinarily. I agree. And I think that the court's point points up the fact that these proceedings are not expedited removal proceedings under 1228B, are not a valid arena in which to challenge legal determinations such as this. How should we be thinking about the fact that there was no engagement at all after the Faro? It was almost, you know, like the government says you essentially declined to participate at all. So this question about if we construe it as a factual legal challenge, I mean, is there any sort of abandonment or waiver problem that's sort of separate from exhaustion because you didn't respond at all? I don't know of any law specifically on abandonment or waiver. However, there's no procedure for reconsideration or reopening in this situation. But Attorney Aguirre did, in fact, on August 12th, 2024, submit a letter, which is the Appendix A to our briefs, because for some reason it wasn't included in the certified record of proceedings. That was how long after the notice? The notice was issued in March of 2024. Five months later. Five months later, asking for sua sponte reconsideration. Again, there's no time limit on asking for such a thing. Because it doesn't exist. Right, it doesn't, it doesn't exist. But in situations where it does not exist under the Supreme Court's precedent in Cento Secaria, then there's no requirement for administrative exhaustion. Could we just back up a bit? Do you agree that exhaustion does apply, that you need to exhaust an objection to the notice in 10 days to a factual question? Yes. And why isn't the question of whether the sentence is 365 or 364 a factual question? So in our reading, a factual question would concern the factual allegations in the notice of intent. So we look at those factual allegations. And one of the factual allegations in that notice is that you were convicted on this day and sentenced to 365 days. Which occurred. But later, there was an amendment to that conviction under California. And that's the factual issue. That's the factual issue that was not presented. But it is not, it is not one of the allegations that was presented. In other words, if the notice gets a fact wrong, then the absence of the correct fact is not a factual issue that isn't preserved? This regulatory scheme doesn't particularly concern and doesn't speak about additional facts over and above the allegations that are listed in the IA 51, not the IA 51 form, but the notice of intent. Well, it seems to me that your argument, if I understand it correctly, is that it would have been wrong to contest that she was not convicted. That was, you would not have checked it because in fact, she was convicted. It's just, there was no opportunity to check a box or provide any additional information about the change. Is that a fair understanding of your argument? That's part of our argument. The argument is that the regulations and the form both speak about the allegations that are listed therein. But if there are additional facts, especially additional facts that are particularly complicated and require some legal understanding, as we're all struggling to understand California CPC here. The length of the sentence is not a complicated thing. We should get to the merits a little bit. What's your argument on the merits that the expedited removal was improper and the determination that it was a particularly serious crime was improper? So my understanding of the particularly serious crime issue is that. Well, and the aggravated felony issue, both. Ultimately, you want to argue this was not an aggravated felony, so the DHS proceedings were improper. And this is not a crime of violence aggravated felony under 16a, correct? Because of the sentence is only 364 days. No one disputes it's not a crime of violence, right? That's not, that issue is not before us. That in fact, with the 17b amendment, that it's not a crime of violence? No, Your Honor, nobody disputes that, I don't think. Well, it depends on whether it was 364 days or 365 days, does it not? It does, and the undisputed facts show that it was 364. Eventually, but there's an issue. The statute says whether you were convicted of an aggravated felony. And that, so the question is, what does conviction mean? Right. We have the Thomas decision by the BIA, but what's your argument that it's, that it, that it's not the original sentence and conviction that, that applies here? Because it would be fundamentally unfair for this court to retroactively apply the Thomas and Thompson rule to sentence modifications that occurred before that date in 2019. But you agree that the, well, actually, let me, let me ask you this question I'm really struggling with. You seem to agree that the 1003.55, the CFR was not in effect when DHS issued the Faro, right? Correct. And so what do we do about that? I mean, that's what it seems, that's the pivot, the linchpin of your argument relies on what that CFR did to matter of Thomas. And if the DHS did not have the benefit of that, how are we supposed to be thinking about that on appeal? So what I would say is that then the court would consider it as a retroactivity issue. I'm going to run out of time. I asked the court to allow me time to finish response to your question. We're going to continue for a while. This is, we want to get this right. Understood. So what Mr., now Mr. Justice Gorsuch wrote in Denis Robles and the, the Stewart capital factors, which are otherwise referred to as the retail union factors are very, very important here because what the DHS rulemaking did was encapsulate those factors, those equitable factors that one might expect about the fairness of retroactivity. That's what the DOJ, that's what, yes, the DOJ rulemaking did. But ultimately we're interpreting a statutory term, conviction. Is that correct? And the regulations state that in determining what convict, what the conviction means, we look at whether there was a change to the, to the sentence. Is that correct? Yes. Yes. Yes. So the opinion that then Judge Gorsuch wrote for this court was in the context of Chevron. We now have Loper-Bright. We decide what that means. And if we decide that the statute means this, it's not being retroactive. We're not doing anything retroactive. We haven't decided that issue before. Shouldn't we, as a matter of first impression, decide what a conviction is? We have, we have the Thomas decision, what the BIA now says. We pay some attention to that. We don't defer to it. We also have the Seventh Circuit opinion saying that essentially the Thomas interpretation is the best interpretation. Why should we not say what the law is and what it's always been? Because that's what, in our view, the statute always meant. Why are we bothering about retroactive, retroactivity of a regulation when it's our job? To interpret the statute. I think that the court should still consider, if it decides to look at the issue of what constitutes a conviction in this case, should still look at the same equitable factors when deciding whether or not to apply such a ruling retroactively. Well, do you have any precedent for that approach when we're just interpreting a statute and we say, oh, we shouldn't, we haven't interpreted the statute before, so it should be a prospective ruling, even if we think the language has meant something since it was enacted? I think that Your Honor makes a very good point about Chevron being overruled. And in honesty, it's not something that I had considered when preparing for this argument. But when we look at these factors, we see all across the country non-citizens who have pled and then used procedural devices similar to California Penal Code Section 17 in order to amend their convictions. They have a heavy reliance interest on having been able to do that before a matter of Thomas and Thompson. They have a heavy burden on them in terms of removal. The equitable issue makes sense. I just don't know that we ever do that. The courts do that when they're interpreting a statute, say we're not going to apply what we think has always been the best interpretation of the statute in the past because somebody else interpreted it differently. And the Supreme Court does that when they overturn perhaps the majority of the circuit's interpretation of the statute. And can you give me some precedent that we should look to to see that we would be looking at these equitable concerns in this context? And you may want to supplement with something because, as you say, you haven't thought about the low-pair of right issue before. So if you want to submit supplemental authority on that, I think the panel would be happy to see that. Indeed, we would like to. It's a very weighty and important question. Thank you. I see that I'm out of time. Thank you very much. Let me ask you one more question.  The low-pair issue certainly makes sense to grapple with if the ask were for us to determine the effect of the statute, right? I mean, I thought that what you were asking for was to remand in the interests of justice so DHS can make the determination in the first instance. Isn't that what you're asking us to do? We are asking because DHS has not had a chance to pass on the 8 CFR 1003.55 issue. OK, and so if you can help me with just one more thing, which is if we remand but the DHS did not have the benefit of the regulation at the time that it issued the FARO, you're relying on the interests of justice as the reason why it should reconsider its application now? What is your argument on that? We had been relying on our retroactivity arguments, including Denise Chavez. Yes. Thank you. Thank you all. Thank you, Your Honor. Thank you, counsel. May it please the court. Peter Gannon for the U.S. Department of Justice. The honor's petitioner failed to exhaust any challenge to her removability during the time provided to her between the issuance of the notice of intent to issue the FARO and the FARO itself, so she has no colorable challenge to the final order of removal against her. Do you agree that there's some things that need not be preserved at the time of the notice of expedited proceedings? For example, a legal argument? No, Your Honor. I believe the alien is under the obligation to challenge it to bring any challenge to her removability. Legal or factual? In those 10 days. Within 10 days? Yes, Your Honor. How? How? Let me just ask you a question. Sorry, sorry, sorry. And you think the notice suggests that the alien can do that? Yes, Your Honor. I think the notice itself has various checkboxes on it that allow an alien to indicate that she disagrees with the removability decision, including specifically the facts alleged against her. In this case, 365 days is a fact relating to her conviction. There's a specific box for challenging her conviction. Even just checking a box, however, contesting her removability in this context likely would be enough to get to exhaustion, but she did not do that. Additionally, beyond the I-851 itself, the alien has the option within 10 days to submit a written response to DHS. The petitioner refused to do that. The I-851 indicates that she refused to engage in this process at all. She refused to sign for anything. The officers noted that, and she simply did nothing for those 10 days. And... Counsel, is your understanding of the record at that point, or at least what was in front of DHS, was the sentence 365 days or was it 364 days? The record before DHS indicated that in 2018, under 17B, her conviction was changed to a misdemeanor. However, under the operative law at the time, Thomas and Thompson, the DHS officer properly determined that 365 days, when later sentence modification was for a discretionary issue, did not impact her removability. Well, let me ask it this way. I'll go back to the document. I was referring to earlier the August 2024 order. Is that when the sentence was reduced to 364 days? Or when the conviction was changed to a misdemeanor, did that automatically make it 364 days? I think for purposes of the DHS determination of removability, it doesn't matter. I think that if the petitioner believes that one date was operative over the other, she needed to make that challenge within 10 days. And is that a factual issue or a legal issue? It's a factual issue, Your Honor. 365 days or something else. And I know on the exhaustion question, we have these out-of-circuit cases. But has any court said that a factual issue need not be exhausted? No, Your Honor. I think every circuit that's looked at this is either explicitly or implicitly held that factual issues need to be challenged. So on that particular question, it's whether a legal issue has to be exhausted. So, Your Honor, if you think it's instead a legal issue, I think the Eleventh Circuit still has the better reading of the exhaustion section. That's really where the split comes, is on the legal issue. It is, Your Honor. All right. You said that the DHS officer looked at the record, saw the change in the sentence. I think if the DHS officer saw that and considered it, there's no need for the petitioner to have presented that specifically. Where is that? That's in the record that the DHS officer did all these things? Your Honor, certainly it is not specifically in the record that the DHS officer considered it. But given the record that DHS had and the presumption that DHS based the FARO and the I-851 on that record, we can tell that DHS properly charged her with removability. So my question about exhaustion is mooted, I think, by your statement that we presume that the DHS officer was fully informed, fully aware of what was in the DHS record when the DHS officer made the decision. Is that fair? I just want to make sure I understand, Your Honor, what question about exhaustion? I was comparing this to a court proceeding when there's a motion for summary judgment and a response and the parties don't refer to something in the record and then on appeal, refer to that in the record. Generally, we say it's too late. You need to bring it to the attention of the judge. Now, perhaps the judge noted it on his or her own and then the failure to present it to the judge's attention is mooted. I was asking if there was anything to show that the petitioner here had made the DHS officer aware of the resentencing. You said because it's in the DHS record at the time, we presume that the DHS officer was aware of this when making the decision. Am I understanding you correctly? Yes, Your Honor. The issue for exhaustion is whether or not the petitioner presented the issue to DHS. It's not whether or not the DHS officer was necessarily aware of it or not. I would think that the DHS officer is presumed to be aware of the fact. It's irrelevant whether it was brought to the DHS officer's attention because of standard practice or because the petitioner said it. Hey, look at page 35 of the record. Well, Your Honor, I think for exhaustion, the issue has to be presented to either the immigration court in 1229A proceedings or the DHS officer in these 1228 proceedings. It's not enough that it be in there and that we—I think the presumption is whether or not DHS erred in issuing the FAR regardless. I think it's this kind of nebulous interest of justice remand that petitioner is asking for rather than asking this court to take on the issue of the sentence modification squarely. Could I just—now I'm a little confused. I thought earlier you had said that the record in front of the DHS showed that the conviction had been modified, but it didn't show that the sentence had been modified. That's correct, Your Honor. Because when Judge Hartz asked you the question, he used the word re-sentencing, but at least on the face of it, it didn't show that the sentence had changed. Yes, Your Honor. Thank you for the opportunity to clarify that. There was no re-sentencing in the record proceeding, but I think what the record proceeding does include is this sentence modification or 17B, and under matter of Thomas and Thompson, which controlled the DHS officer's proceedings, that sentence modification didn't matter for purposes of whether or not the conviction was an aggravated felony. So is your position that at the time DHS issued the FARO, they understood that there was an aggravated felony here? That's their position. There was an aggravated felony, and because of matter of Thomas, this is effect on misdemeanors. In other words, I'm not asking this very clearly. My question is, at the time DHS issued the FARO, is it your position that the officer knew that the length of the sentence was 364 days? No, Your Honor. I think the... And why is that? If it's as a matter of law in California that a misdemeanor is, as a matter of law, 364 days? So, Your Honor, as the I-851 alleged, DHS believed the petitioner had been convicted of this crime and had been sentenced to 365 days. And as a result of that, she was removable as an aggravated felon. That is the determination that DHS made. I think to the extent petitioner argues that, well, DHS didn't know about the sentence modification, we can point to the fact that the 17B, a change from a felony to misdemeanor, was in the record of conviction, or record of proceeding. But for petitioner to exhaust the challenge to the length of her sentence for this court's review, she needs to do something before DHS to say it was not 365 days, as factually alleged. How would she have done that on the form? If we entertain your position that it's a factual challenge, what box would she have checked? I think, Your Honor, there's an initial box saying that she challenges her, uses the phrase deportability, but removability, and or wants to seek withholding of removal. There's a box underneath that specifically saying she wants to challenge her deportability. There's a box beneath that that specifically says, I challenge my conviction as alleged in Allegation 6. The sentence was Allegation 7. I'll grant you that. But I think checking any of those boxes, and we'd be having a very different conversation today about whether or not she exhausted it. Instead, she refused to sign the form. She refused to engage with the process. And she did nothing for 10 days. And then 139 days later, she filed this, she mailed this letter to DHS. It seems that your position is checking any box is exhaustion. And I don't think that's, that doesn't seem to make sense. I mean, the box that applies to the issue here isn't available. Then she could have done a written challenge to DHS, a written rebuttal within those 10 days. That's another option under the regulations. And I think the hypothetical of what would happen if she had checked any box, it might well be that checking a box would not have been enough to exhaust the issue. But I think what exhaustion looks like in these sorts of proceedings is an issue before the court where she checked none of the boxes and where she made no written rebuttal to DHS, where she refused to engage with the process within the time that the statute says she has a reasonable opportunity to respond to the notice. And she did not. And therefore, she did not exhaust any challenge, whether facts were legal, to her removability. I thought you said a few minutes ago, and I wanted to ask if I understood correctly, that the issue of the meaning of the statutory term conviction is not before us. We can't address that issue. I mean, if, for example, we decided that the meaning of conviction is the same as what DOJ said or BIA said in Thomas, then that would resolve everything. But you're saying we should not make that determination? I don't think the petitioner has presented it to you, Your Honor. In her opening brief or anything before today, she has not challenged on the merits whether or not her sentence modification renders her not removable. She instead argues that this regulation promulgated after her faro warrants remain in the interest of justice. And that's simply not something that this court can or should do. You don't think she's saying that her conviction, whether she had a conviction, should be decided in accordance with what the BIA had said before Thomas? You don't think that's an argument she's making? No, Your Honor. I think she has presented this issue of retroactivity and everything. But I don't think she has squarely placed that issue before you in her opening brief or any other briefing. I'm asking whether you had done that. You didn't respond by saying, we don't have to worry about all these other things because under the best interpretation of the statutory term conviction, she was convicted of an aggravated felony. And it was proper to proceed with expedited removal with the faro. Your Honor, I believe in the answer in the brief, I did drop a footnote indicating that she had not challenged the merits of what her sentence modification meant. But no, Your Honor. I mean, Thomas and Thompson has not been briefed in this case. She's challenging whether, as a matter of, I would say, fact, she would say law, she was sentenced to 365 days as alleged in the I-851. Just one thing first. But she has to say why that's legally relevant. And that depends on the meaning of conviction. And I think, Your Honor, the issue she argued to this court was that Thomas and Thompson should not be applied to her retroactively. And she pointed to this regulation passed by the Executive Office for Immigration Review after the faro was issued. None of that means that DHS made any mistake in the time that it issued her faro. Could I just ask, leaving aside the 365 versus 364, if the conviction, call it a conviction, goes from felony to misdemeanor, under the statute, which I think, I hate to do this, 1101A43F, it says aggravated felony means a crime of violence for which the term of imprisonment is at least one year. Let's forget about 365 and 364. But if we now have a misdemeanor, how is this an aggravated felony? Your Honor, misdemeanors can be aggravated felonies. At least, that's the government's position. The 365 day, I believe, is only relevant to crimes of violence under F and, I think, theft under G. So it's the government's position that a misdemeanor can be an aggravated felony. Yes, Your Honor. An offense designated as a misdemeanor under state law can be an aggravated felony under federal law. And that's because of, yes, Your Honor. Can I follow up on that? I'm very confused. I thought that under California law, a misdemeanor is per se 364 days as a matter of law. And so I don't understand why we're sort of litigating this question about how long the sentence was. Because if it was a misdemeanor, if her sentence was reduced from a felony to a misdemeanor under California law, granted, a misdemeanor may be, in some contexts, still an aggravated felony under the statute. But under California law, it cannot be, right? So, Your Honor, under Thomas and Thompson, a sentence modification like that done for a discretionary purpose, like 17B, rather than a procedural substantive defect, will not negate the original 365 sentences you received when it was a felony and it triggered immigration consequences. Right. But that requires analysis of the effect of matter of Thomas and then the CFR that says it doesn't apply retroactively. But as a matter of California law, at the time that her sentence was modified in 2018 to a misdemeanor, it necessarily was 364 days under California law. Under California law, yes. Whether that change carries a change to the immigration consequences for her original 365 days, that's the issue she needed to present to DHS.  Whether it's factual or legal. Is it factual or legal? Your Honor, I believe it's factual because it was alleged against her as 365 days. Under Pareto and the categorical approach, we have this initial factual question of what was she convicted of. There may be some legal questions that spring from that, but it's an underlying fact. I think even if it was a legal challenge, despite the circuit split on that issue, I think the 11th Circuit has it right that she could have challenged the legal. Well, you've just heard the counterargument from Judge Rossman that under California law as a matter of law, it's 364. So how does that make it a factual issue? Because, Your Honor, the fact is that at the time of her sentence for a felony, she received 365 days. The fact that California modified it later as a matter of discretion doesn't bear on the immigration consequences of that original 365-day sentence. Thank you, Counsel. Thank you, Your Honors. At your time, we went considerably over your time, but I'm going to give you a minute. I'm going to stop you in mid-sentence after a minute, but maybe you can clarify some things if you want to. Thank you for the opportunity, Your Honor. I think the simple distinction or saying that the distinction is simply factual versus legal is not the proper way to think about it. I think the way to think about it is factual challenges must, as many courts have held, be brought up as—it's exhaustion as of right. It's an issue that needs to be exhausted. However, the ultimate issue is whether the regulations in the form are a dead end, essentially, as the Supreme Court held. What the regulation actually says, in distinction to what opposing counsels argued, is that it's not just that she can submit a writing, but that the petitioner had to submit a written response rebutting the allegations that are contained in the notice of intent. And the problem, as we've articulated before, is that those allegations are correct. There's no—there's potential for a challenge to material facts. I said I'd cut you off in mid-sentence, and I think we get to your point anyway.  Thank you. Thank you, counsel. Case is submitted, and—counsel are excused. I was wondering if you were going to be here for the next case, too.